In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-2207

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

WILLIAM P. SCHMITT,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No.05-CR-181—**J.P. Stadtmueller**, *Judge.*

ARGUED JUNE 5, 2007—DECIDED AUGUST 7, 2007

Before EASTERBROOK, *Chief Judge*, and MANION and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* William Schmitt pleaded guilty to one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(A). Everyone agreed that, if the Sentencing Guidelines were to be followed, his sentence would fall between 63 and 78 months' imprisonment. Schmitt, however, argued that the only reasonable sentence for him would be below that range. At his sentencing hearing, he showed convincingly that the overwhelming majority of defendants charged with the same crime in the state courts covering the same area as the Eastern District of Wisconsin received sentences far lower than 63 months. Indeed, only nine of

104 defendants sentenced in the previous five years in those counties received any prison time at all. Schmitt argued to the district court that it should take this evidence into account and sentence him below the guideline minimum. The district judge disagreed and imposed a guideline sentence of 63 months. Schmitt appeals his sentence, arguing that 18 U.S.C. § 3553(a)(6) requires district courts to consider the disparity between state and federal sentences in choosing a sentence. He also asserts that the district court erroneously believed that the guidelines are mandatory in cases involving child pornography and accordingly afforded too much weight to the guidelines in this case. We agree with Schmitt in part. Although the district court correctly rejected Schmitt's argument about federal/state disparities, we cannot be confident that it approached the guidelines in the way that *United States v. Booker,* 543 U.S. 220 (2005), and now *Rita v. United States,* 127 S.Ct. 2456 (2007), require. We therefore vacate the sentence and remand for resentencing.

**I**

In March 2004, the Norwegian government, attempting to identify potential possessors and distributors of child pornography, began investigating the global use of computer-based, peer-to-peer file sharing programs. In the course of that investigation, Schmitt's internet protocol address was identified as having shared at least seven files containing child pornography. The Norwegians shared this information with the U.S. Federal Bureau of Investigation ("FBI"), which then pursued its own investigation. Schmitt later admitted to FBI agents that he had downloaded movies and photographs depicting child pornography; a subsequent search of Schmitt's computer confirmed that fact. Schmitt was charged in a three-count indictment and pleaded guilty to the third count.

After factoring in a number of sentencing enhancements not relevant to this appeal, the court concluded that Schmitt's guideline range was 63-78 months' imprisonment. He asked the district court to impose only a term of probation, however, for a number of reasons. Schmitt's primary claim was that sentencing him to probation was necessary to reduce or eliminate the disparity between Wisconsin state sentences for child pornography possession and federal sentences for the same crime. Schmitt also argued that his particular crime was more innocuous than other child pornography offenses, since he did not purchase or produce the material, did not expose others to it, and did not sexually assault any children. In addition, Schmitt attempted to demonstrate that his crime was aberrational; that generally he was a productive and upstanding member of his community, he had strong and stable familial connections, and he volunteered extensively before his incarceration. He also sought counseling and psychological treatment for his interest in child pornography and underwent two psychological evaluations by doctors who each concluded that Schmitt did not pose any risk of engaging in sexual or dangerous misconduct in the future.

The district court was not persuaded to sentence Schmitt below the guidelines. It rejected his principal argument that it was either required or entitled to consider any disparity between state and federal sentencing in determining Schmitt's sentence. It also concluded that the rest of Schmitt's evidence was not compelling enough to warrant a sentence below the guidelines. The court emphasized on numerous occasions that Congress, by passing the PROTECT Act in 2003, which targeted child sex offenses, manifested an intent to *prevent* district judges from departing from the guidelines in such cases. Because "Congress has spoken" in this area, the court thought, the favorable evidence offered on Schmitt's behalf did not permit the judge to impose a below-guidelines sentence.

## II

On appeal, Schmitt argues first that the district court should have considered the sentence Schmitt might have received had he been charged with the same crime in Wisconsin state court. Section 3553(a)(6) requires sentencing courts to weigh "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. . . ." Schmitt asserts that this provision applies not only to disparities within the federal system, but also to disparities between sentences imposed in state court and those handed down in federal court. Stark disparities in the latter setting exist, as Schmitt showed with thorough and compelling evidence that similarly-situated defendants in Wisconsin state court nearly uniformly received sentences far lower than those prescribed in the federal guidelines. Schmitt acknowledges that his argument lacked merit before *Booker*. See *United States v. Schulte*, 144 F.3d 1107, 1111 (7th Cir. 1998) ("[A] disparity between federal and state sentences does not take a case out of the heartland of cases contemplated by the Sentencing Commission."). He argues, however, that *Booker* afforded district judges the flexibility to consider, and attempt to minimize, differences between state and federal sentences. We review *de novo* questions of law involving the interpretation of a provision of the guidelines, see *United States v. Stitman*, 472 F.3d 983, 986 (7th Cir. 2007).

According to the Sentencing Commission, one of the principal purposes of the guidelines was to establish "uniformity in sentencing by narrowing the wide disparity in sentences imposed by different *federal courts* for similar conduct by similar offenders." U.S.S.G. Ch.1, Pt.A(3), intro. comment. (emphasis added). Since, as we recognized in *Schulte,* "[t]he Guidelines have no effect on a state legislature's freedom to impose criminal punishments that differ from the federal government's sanctions for the same

conduct . . . [a] disparity is not 'unjustified' simply because the federal and relevant state governments impose different punishments on similar conduct." 144 F.3d at 1110-1111. Indeed, adjusting federal sentences to accord with those imposed for similar crimes in state court would undermine the goal of uniformity within the federal system, to the extent that the states have adopted different sentencing philosophies. *Id.* at 1111 ("If courts were to depart from the sentences mandated by the Guidelines in deference to numerous and varying standards in the state systems, they would eviscerate the uniformity in federal sentencing that is the *raison d'etre* of the Sentencing Reform Act of 1984."); see also *United States v. Haynes*, 985 F.2d 65, 70 (2d Cir. 1993) ("Allowing departure because a defendant might have been subjected to different penalties in state court would make federal sentences dependent on the law of the state in which the sentencing court was located, resulting in federal sentencing that would vary from state to state. To adopt this rationale for departure would surely undermine Congress' stated goal of uniformity in sentencing.").

The force of that reasoning survives *Booker*. *Cf. United States v. Wallace*, 458 F.3d 606, 608 (7th Cir. 2006) ("A bad reason for departing pre-*Booker* remains a reason that, at least as a matter of advice from the guidelines, is still bad . . ."). In *United States v. Wurzinger*, 467 F.3d 649, 653-54 (7th Cir. 2006), we considered a post-*Booker* claim that the sentencing judge should have taken into account the fact that Wurzinger's co-conspirators received more lenient sentences in state court. We held:

> Courts should reduce "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), but in most cases "disparities are at their ebb when the Guidelines are followed," *United States*

*v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006). Reducing a federal prisoner's sentence to accord with that of a similarly situated state convict may decrease one sentencing disparity but simultaneously enlarges another: that between the federal convict and all similarly situated federal convicts. *Id.* Because penalties vary from state to state, sentence reductions to approach state penalties similarly vary with the state in which the federal sentencing court sits, unjustifiably creating disparities among federal convicts.

See *United States v. Branson*, 463 F.3d 1110, 1112 (10th Cir. 2006); *United States v. Williams*, 282 F.3d 679, 681-82 (9th Cir. 2002). We cannot say that the court's failure to narrow the gap between Wurzinger and his co-conspirators was unreasonable. See also *Branson*, 463 F.3d at 1112 ("Federal and state authorities have concurrent jurisdiction over various offenses and may apply disparate punishments to similar conduct. Adjusting federal sentences to conform to those imposed by the states where the offenses occurred would not serve the purposes of § 3553(a)(6), but, rather, would create disparities within the federal system, which is what § 3553(a)(6) is designed to discourage."); *Williams*, 282 F.3d at 681-82 ("[T]he district court abused its discretion in departing [downward] on the ground that there was a disparity between federal and state penalties. . . . Allowing this result to stand would undermine the goal of uniformity that Congress sought to ensure in enacting the Guidelines, because every federal sentence would become dependent upon the practice of the state within which the federal court sits." (internal quotation marks omitted)).

The district court thus correctly rejected as immaterial for federal sentencing purposes the sentence that Schmitt might have received had he been charged in state court.

## III

Schmitt's second argument, however, has merit. He claims that the district court inappropriately treated the guidelines as mandatory in child pornography cases. In opposition, the government points to the district court's statement at sentencing that "[c]learly [the Guidelines] are not mandatory. . . ." We apply *de novo* review to a claim that the district court failed to appreciate the advisory nature of the Guidelines. *Stitman*, 472 F.3d at 986. We agree with Schmitt that the district court placed undue weight on the guideline range in choosing the ultimate sentence, and that Schmitt is therefore entitled to be resentenced.

The Supreme Court recently reaffirmed our position that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Rita*, 127 S.Ct. at 2465; see also *United States v. Gama-Gonzalez*, 469 F.3d 1109, 1110 (7th Cir. 2006). Rather, the non-binding presumption of reasonableness in sentencing "applies only on appellate review." *Rita*, 127 S.Ct. at 2465. As we stated in *United States v. DeMaree*, 459 F.3d 791, 794-95 (7th Cir. 2006):

> The judge is not required—or indeed permitted, *United States v. Brown,* 450 F.3d 76, 81-82 (1st Cir. 2006)—to "presume" that a sentence within the guidelines range is the correct sentence and if he wants to depart give a reason why it's not correct. All he has to do is consider the guidelines and make sure that the sentence he gives is within the statutory range and consistent with the sentencing factors listed in 18 U.S.C. § 3553(a).

In this case, after the brief statement to which the government alluded, the district judge explained his understanding as follows:

> [W]hile the sentencing guidelines in today's world are viewed as advisory in the context of the post-*Blakely*, *Booker*, *Fanfan* world, the hard reality remains that against 19 years or close to it of experience, there is a growing attitude, particularly in the Court of Appeals, now that we're a little more than a year out from *Booker* and *Fanfan*, that sentences within the guidelines are presumptively correct. And if we, as trial Judges, are to impose sentences that are outside those mainstream guidelines as the sentencing commission and congress have promulgated them, there better be very, very cogent reasons why the Court believes it appropriate in a given case to impose a sentence outside the guidelines.

If it was not clear a year after *Booker* was decided, it is now apparent in light of *Rita* that the approach described by the district court gives too much weight to the Guidelines. It would be different—and unobjectionable—if the judge had said only that, in light of the discretion he now possesses under *Booker* and *Rita,* he was electing to impose a guideline sentence in this particular case unless the defendant could persuade him otherwise. But that is not what the judge said here. Instead, the tenor of his remarks indicated that he felt that there was an outside constraint on his discretion that he was not free to set aside.

Moreover, the judge offered another reason, equally troubling, for his choice of sentence. He suggested that Schmitt's guideline range deserved more weight in the calculus because his crime involved child pornography, a major focus of the PROTECT Act in 2003:

> Given the fact that Congress has spoken in unmistakable terms, I cannot in good conscience deviate from the advisory sentencing guidelines because of the good things that have been said today about William

Schmitt, the good things that appear in the presentence report, and the wonderful things that the professionals have to say about him in terms of lack of pedophilia, lack of pursuing in a physical sort of way those of tender age who otherwise are taken advantage of and appear in these materials.

But what I am here to address is the simple reality that Congress has spoken loud and clear, and given the very close proximity to the mandatory sentence that would have otherwise applied, I frankly do not see and do not find any basis to impose other than the sentence called for at the low end of the advisory sentencing guidelines.

While we noted in *United States v. Grigg*, 442 F.3d 560, 564 (7th Cir. 2006)*,* that district courts "ought to give respectful attention to Congress' view that [crimes involving child pornography] are serious offenses deserving serious sanctions," we made it equally clear that a district judge's duty in sentencing child sex offenders is no different than it is in any other case. Child sex cases are not immune from the dictates of *Booker.* We therefore have held that "§ 3553(b)(2), [the sentencing provision of the PROTECT Act intended to restrict the authority of the district courts to depart from the Guidelines in sexual offense and child pornography cases] cannot constrain the discretion of a district court to impose a sentence outside the range recommended by the Sentencing Guidelines . . . ." *Id.* at 564. There is a difference between weighing the seriousness of a particular offense more heavily under § 3553(a), and feeling compelled to impose a guideline sentence for a particular class of crimes. The latter approach inappropriately limits the consideration that a district judge gives to the entire range of factors made relevant by § 3553(a) before choosing a sentence. It especially devalues those factors that are unique to an individual defendant—like the "wonderful things" noted

by the district judge that were said about Schmitt—that are not taken into account when calculating the guideline range. Because, as we interpret this record, the district judge placed a "thumb on the scale favoring a guideline sentence," *United States v. Sachsenmaier*, No. 05-3505, 2007 WL 1839282, at *4 (7th Cir. June 28, 2007), Schmitt is entitled to be re-sentenced.

* * *

The judgment of the district court is therefore VACATED and the case is REMANDED for resentencing.

A true Copy:

     Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*